UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA EDGERLY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF ALAMEDA,<br><br>　　　　　Defendant. | Case No. 24-cv-06232-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

　　　Plaintiff Erica Edgerly filed this action against defendant the County of Alameda (the "County") and unidentified deputies in the County Sheriff's office (the "Doe Defendants") (collectively, the "defendants") on behalf of her deceased son, Yuri Brand, who was taken into custody at Santa Rita Jail on September 8, 2023, where he was murdered by another inmate, Bryson Levy, five days later.[1] Edgerly alleges that the defendants were negligent in failing to protect her son from identifiable safety risks, and that their negligence led to his untimely death. She also contends that the defendants violated the Bane Act, Cal. Civ. Code § 52.1. She asserts some claims in her individual capacity and others as survival claims. The County has moved to dismiss Claims 3 and 4, the only claims against it, under Rule 12(b)(6).[2] I vacated the hearing on this motion because oral argument was not necessary. *See* Civ. L.R. 7-1. The County's motion is granted.

## BACKGROUND

　　　On or about September 8, 2023, Brand was taken into custody as a pre-trial detainee at Santa Rita Jail, which is operated by the County. Complaint ("Compl.") [Dkt. No. 3] ¶ 14. Brand

---

[1] Levy is not a defendant. In the Complaint, Edgerly refers to him as "Bryson Levy," but in her opposition papers, his last name is spelled "Levi." The County refers to him as "Levy." I will refer to him as "Levy" throughout this Order, but the parties should clarify the spelling in the next set of papers that are filed.

[2] The Doe Defendants have not moved to dismiss or entered an appearance.

was detained on non-violent charges related to the burglary of an unoccupied home. *Id.*

Brand was a diagnosed schizophrenic. *Id.* ¶ 15. The Complaint alleges that the County was aware of Brand's diagnosis because he had been provided with mental health medication and placed in mental health housing during prior unrelated detentions at Santa Rita Jail. *Id.* When he was admitted and detained, the County did not classify Brand as a behavioral health inmate or make "any other arrangements for his mental health." *Id.* ¶ 16. The County did not provide Brand with medication for his schizophrenia over the course of his five-day detention at Santa Rita Jail. *Id.*

Upon his admission into Santa Rita Jail on September 8, 2023, yet-unidentified County Sheriff's Office classification deputies (the Doe Defendants) placed Brand into general population to be housed in a shared cell. *Id.* ¶ 17. On September 13, 2023, the Doe Defendants assigned Brand a cell mate, Levy, who was allegedly "in the midst of a mental health episode" when he was arrested. *Id.* ¶ 20.[3] The Complaint alleges that the Doe Defendants placed Levy in Brand's cell "despite knowing that [Levy] had a criminal history of violence, sexual assault, the use of deadly weapons and mental health problems." *Id.* ¶ 18.

The Doe Defendants transported Levy to Brand's cell at approximately 11:42 A.M. on September 13, 2023. *Id.* ¶ 22. Forty-six minutes later, yet-unidentified deputies found Levy on top of Brand in their shared cell; Brand was unresponsive on the floor. *Id.* Levy reportedly used a mattress to suffocate Brand to death. *Id.* According to the Complaint, Levy and Brand had been left alone for an "unreasonable amount of time" leading up to Brand's death. *Id.*

The Alameda County Coroner's Bureau prepared an investigative report that identified asphyxia and neck compression as the causes of Brand's death. *Id.* ¶ 23. Edgerly alleges that when the family and the family's lawyers examined Brand's body, they discovered a "large, jagged cut which runs from the front to back of Mr. Brand's tongue." *Id.* According to the Complaint, the autopsy did not identify what happened to Brand's tongue, nor did it include any

---

[3] Edgerly states that it is her understanding that the police officers that arrested Levy and transported him to Santa Rita Jail had initially been called to place Levy on a 5150 involuntary mental health hold. Compl. ¶ 20.

reference to what Brand's family and their lawyers observed as a "missing . . . top layer of skin" from Brand's scrotum. *Id.* Edgerly believes that the state of Brand's body, as observed by his family and their lawyers, suggests that he was "subjected to not only a deadly but lengthy attack" without it "ever being heard or observed by any Alameda County Sheriff's Office deputies or other County employees." *Id.* ¶ 24.

Since Brand's death, Edgerly has "attempted to obtain information from [the County] regarding how [Brand] could have been subjected to such a horrific death." *Id.* ¶ 25. She has inquired about why the Doe Defendants assigned Brand and Levy to occupy the same cell and then "left them unsupervised." *Id.* She has not received any answers. *Id.*

Edgerly seeks damages both in her individual capacity and as the successor-in-interest to her son, Brand. *Id.* ¶ 26. She alleges that as a "direct and proximate result of the Defendants' failure to protect [Brand] from the obvious risk of being housed with a violent cellmate, [Brand] and Plaintiff suffered injuries, emotional distress, fear, terror, anxiety, and a loss of sense of security, dignity, and pride as United States Citizens." *Id.* ¶ 26. She seeks damages for pain and suffering (including emotional distress), violation of constitutional rights, hospital and medical expenses, and all other recoverable damages, penalties, and attorney fees and costs. She seeks punitive damages against the Doe Defendants as well.

The County has moved to dismiss Claims 3 and 4, which are asserted against both the County and the Doe Defendants. Motion to Dismiss ("Motion") [Dkt. No. 15].

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.' " *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### I.   CLAIM 3: BANE ACT

Edgerly asserts Claim 3 individually against the County and the Doe Defendants for violations of the Bane Act, Cal. Civ. Code § 52.1.  Compl. ¶¶ 44-48.  The County moves to dismiss because it has not been plausibly alleged against any defendant.[4]

The Tom Bane Civil Rights Act, 1987 Cal. Stat. 4544, was enacted in 1987 to address hate crimes.  "The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats,

---

[4] It is not entirely clear from the County's papers whether it is asking me to dismiss Claim 3 against it, or against it and the Doe Defendants.  I will grant the County's motion to dismiss only as to itself; the Doe Defendants are as-yet unidentified and unserved.

4

1    intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018)
2    (quoting *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230 (2007)); *see also Chaudhry v.*
3    *City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1).  In
4    addition to alleging facts showing that the plaintiff's rights were interfered with by threats,
5    intimidation, or coercion, the plaintiff must also allege that the defendant had a "specific intent" to
6    violate the plaintiff's protected rights.  *See Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th
7    Cir. 2018) (going on to explain that the specific intent inquiry for a Bane Act claim is "focused on
8    two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the
9    circumstances of the case,' and second, '[d]id the defendant commit the act in question with the
10   particular purpose of depriving the citizen victim of his enjoyment of the interests protected by
11   that right?' . . . So long as those two requirements are met, specific intent can be shown 'even if
12   the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless
13   disregard' of the constitutional right.") (internal quotations omitted).  Claims under section 52.1
14   may be brought against public officials who are alleged to interfere with protected rights; qualified
15   immunity is not available for those claims.  *See Reese*, 888 F.3d at 1041.

16   The County moves to dismiss the Bane Act claim because Edgerly has not pleaded facts
17   plausibly showing that the County used threats, intimidation, or coercion to interfere with her or
18   her son's rights.  Edgerly does not oppose.  She states that she mistakenly alleged the Bane Act
19   claim as an individual rather than a survival claim.  Oppo. 9:18-20.  She requests that I grant leave
20   to amend so that she can replead the Bane Act claim as a survival claim on behalf of her son.  *Id.*
21   The County asks that I deny Edgerly leave to amend; it argues that her Bane Act claim should be
22   dismissed outright because "no plausible claim for relief under the Bane Act can be made based on
23   the facts of this case" even if she asserts it as a survival claim.  *See* Reply [Dkt. No. 19] at 2-3.

24   The County may well be correct.  Although I will grant Edgerly leave to amend her Bane
25   Act claim as a survival claim, I am skeptical that she can state a plausible Bane Act claim against
26   any defendant.  The Complaint, as pleaded, does not contain facts from which I could infer that the
27   County or the Doe Defendants acted with specific intent to violate Brand's rights.  If Edgerly
28   amends, she should pay attention to the pleading requirements discussed above.

## II.      CLAIM 4: NEGLIGENCE AND WRONGFUL DEATH

The County moves to dismiss Edgerly's negligence and wrongful death claims against it as barred by California Government Code § 844.6, which states that "a public entity is not liable for … [a]n injury to any prisoner." Cal. Gov. Code § 844.6; *see also May v. County of Monterey*, 139 Cal. App. 3d 717, 721 (1983); *Lowman v. Los Angeles County*, 127 Cal. App. 3d 613, 615-16 (1982) (holding that public entities are immune from suit alleging wrongful death of a prisoner in custody).  This is obviously such a claim.  California courts have held that under section 844.6, "a wrongful death action based upon a detainee's death caused by another detainee was barred once the question of whether pretrial detainees were 'prisoners' was affirmatively answered." *Lowman*, 127 Cal. App. 3d at 616.  Brand was jailed for a nonviolent offense and was killed by another prisoner while they were both in custody at Santa Rita Jail.  Brand was a "prisoner" for the purposes of section 844.6.

Edgerly does not oppose. *See* Oppo. 5:21-22.[5]  The County has immunity and it is dismissed from Claim 4 without leave to amend.

## CONCLUSION

The County's motion to dismiss Claim 3 is GRANTED; Edgerly may amend the Complaint to bring Claim 3 as a survival claim, rather than an individual claim.  The County's motion to dismiss Claim 4 is also GRANTED without leave to amend.  Plaintiff shall file an amended complaint within 21 days of the date below.

**IT IS SO ORDERED.**

Dated: December 2, 2024



William H. Orrick
United States District Judge

---

[5] Edgerly opposes dismissal of her state-law claims against the Doe Defendants. *See* Oppo. 5:23-26.  Because I am dismissing Edgerly's state law claims against the County only, this Order has no effect on her claims against the Doe Defendants.  *See supra*, n.4.