**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TY L. CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com

Attorneys for Plaintiff
ERICA EDGERLY

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

ERICA EDGERLY, individually and as successor-in-interest to Decedent YURI BRAND;

Plaintiff,

v.

JACQUELINE SICARD, in her individual capacity as a deputy for the ALAMEDA COUNTY SHERIFF'S OFFICE; ERIK CASTILLO, in his individual capacity as a deputy for the ALAMEDA COUNTY SHERIFF'S OFFICE; JEFFREY VAN ZEE, in his individual capacity as a deputy for the ALAMEDA COUNTY SHERIFF'S OFFICE; OMAR VALERIO TRUJILLO, in his individual capacity as a deputy for the ALAMEDA COUNTY SHERIFF'S OFFICE; ; and DOES 1-50, inclusive.

Defendants.

Case No.: 3:24-cv-06232-WHO

**SECOND AMENDED COMPLAINT FOR DAMAGES**
(42 U.S.C. § 1983)

JURY TRIAL DEMANDED

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

## INTRODUCTION

1. Decedent Yuri Brand—the beloved son of Plaintiff Erica Edgerly—was taken into custody for nonviolent criminal charges at Santa Rita Jail on September 8, 2023. Mr. Brand, who was schizophrenic, was placed into mental health housing at the jail. He remained in the jail for five days without issue.

2. Unbeknownst to Mr. Brand, on the morning of September 13, 2023, Defendant Alameda County Sheriff Deputies Jacqueline Sicard, Erik Castillo, Jeffrey Van Zee, and Omar Valerio Trujillo were making a series of unreasonable decisions that would cost him his life. These decisions began early that morning, when Defendant Sicard completed a housing classification of an inmate named Bryson Levy. Mr. Levy had a well-documented criminal history of violence, sexual assault, and assaults on fellow inmates while at Santa Rita Jail. During at least one prior detention at Santa Rita Jail, Mr. Levy had been placed in restrictive housing where he could not have a cellmate. Nonetheless, Defendant Sicard classified Mr. Levy to mental health housing and permitted him to have a vulnerable cellmate.

3. Defendant Van Zee interacted with both Mr. Brand and Mr. Levy on the morning of September 13. He first saw Mr. Brand who was in his own cell and then saw Mr. Levy, who was in a temporary holding cell in the unit. He told Mr. Levy that he was looking for a cell for him. On information and belief, Defendant Van Zee then assigned Mr. Levy to share the cell with Mr. Brand.

4. A few hours later, Defendants Van Zee, Castillo, and Trujillo then escorted Mr. Levy to Mr. Brand's cell and placed him inside. They did so despite Defendant Castillo recognizing that Mr. Levy "exhibited behavioral health, mental health, and/or emotional disorders".

5. Placing Mr. Levy in Mr. Brand's cell was an unreasonable decision made in

conjunction by Defendants Sicard, Van Zee, Castillo, and Trujillo. It is also one that, in a tragic yet predictable result, cost Mr. Brand his life. In just 45 minutes after being placed in Mr. Brand's cell, Mr. Levy reportedly killed Mr. Brand, using a mattress to suffocate him to death.

6. In the aftermath of Mr. Brand's death, the Alameda County Coroner's Office, which is managed by the same Alameda County Sheriff's Office that operates Santa Rita Jail took an inordinate amount of time to release Mr. Brand's body to his family. Plaintiff and her family were particularly concerned to learn that the The toxicology report confirmed Mr. Brand did not have any medications in his system despite the County being well aware of Mr. Brand's mental health condition and his need for medication, all in direct contravention of the Santa Rita Jail Consent Decree which requires the Jail to provide adequate mental health care to all incarcerated persons with mental health issues.




POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

## JURISDICTION

7. This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in Dublin, California at Santa Rita Jail, which is within this judicial district.

## PARTIES

8. Decedent YURI BRAND (hereinafter "Decedent") was an adult who died intestate and unmarried. Decedent was the biological son of Plaintiff ERICA EDGERLY.

9. Plaintiff ERICA EDGERLY (hereinafter "Plaintiff") is a competent adult, a resident of California, and a citizen of the United States. Plaintiff brings these claims individually on the basis of 42 U.S.C. § 1983, the United States Constitution, and federal civil rights law and on behalf of Decedent as his successor-in-interest. Plaintiff also brings these claims as Private Attorney General, to vindicate not only her rights, but also others' civil rights of great importance.

10. Defendant ERIK CASTILLO (hereinafter "Defendant Castillo") was and at all times mentioned herein is a deputy for the Alameda County Sheriff's Office and is sued in his individual capacity.

11. Defendant JEFFREY VAN ZEE (hereinafter "Defendant Van Zee") was and at all times mentioned herein is a deputy for the Alameda County Sheriff's Office and is sued in his individual capacity.

12. Defendant OMAR VALERIO TRUJILLO (hereinafter "Defendant Trujillo") was and at all times mentioned herein is a deputy for the Alameda County Sheriff's Office and is sued in his individual capacity.

13. Defendant JACQUELINE SICARD (hereinafter "Defendant Sicard") was and at all

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

times mentioned herein is a deputy for the Alameda County Sheriff's Office and is sued in her individual capacity.

14. Plaintiff is ignorant of the true name and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said defendants by such fictitious names. Defendants DOES 1 through 50 are employees of Defendant COUNTY working at SANTA RITA JAIL. Plaintiff will amend this complaint to allege the true names and capacities of Defendants DOES 1 through 50 when ascertained. Plaintiff believes and alleges that each of the Defendant DOES 1-50 are legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each Defendant DOE 1 through 50 proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and failure to provide constitutionally adequate medical care. Each Defendant DOE 1 through 50 is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiff will seek leave to amend this complaint in order to name Defendants DOES 1 through 50 when ascertained.

15. In doing the acts and/or omissions alleged herein, Defendants DOES 1 through 50 acted under color of authority and/or under color of law.

16. On February 1, 2024, Plaintiff filed a timely government tort claim with the County of Alameda. The County rejected this claim on March 8, 2024.

## FACTUAL ALLEGATIONS

17. On or about September 8, 2023, Decedent Yuri Brand, the son of Plaintiff Erica Edgerly, was taken into custody as a pre-trial detainee at Santa Rita Jail, which is operated by the County of Alameda. Mr. Brand was detained on non-violent charges relating to the trespass of an

unoccupied home.

18. Mr. Brand had been diagnosed with schizophrenia well before this detention in September 2023. The County of Alameda was well aware of Mr. Brand's diagnosis, as he had been provided mental health medication and placed in mental health housing during previous, unrelated detentions at Santa Rita Jail.

19. Following his intake and a medical evaluation by jail psychiatric staff, Mr. Brand was placed in mental housing.

20. On the morning of September 13, 2023, between 5 AM and 6 AM, Defendant Alameda County Sheriff's Office Deputy Defendant Jeffrey Van Zee interacted with Mr. Brand twice in his cell in the mental health housing unit. Defendant Van Zee observed that Mr. Brand appeared confused and there was trash on the floor of his cell. Defendant Van Zee did not transport Mr. Brand to his scheduled court appointment that day because Mr. Brand was naked in his cell with a small towel and he did not verbally respond to the deputy. Defendant Van Zee described Mr. Brand's behavior as "bizarre and aggressive".

21. Approximately 30 minutes later, at 6:33 AM on September 13, 2023, Alameda County Sheriff's Deputy Samuel Salazar contacted Defendant Alameda County Sheriff's Office Deputy Jacqueline Sicard regarding inmate Bryson Wayne Levy. Deputy Salazar told Defendant Sicard that Levy was displaying psychologically concerning behavior. Defendant Sicard dispatched jail psychiatric staff to evaluate Levy and the staff member subsequently recommended that Levy be placed in mental health housing. Later in the morning of September 13, 2023, following the jail mental health staff's evaluation, Defendant Sicard prepared an updated classification report for Levy.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607



Thus, Defendant Sicard was or should have been aware of Levy's history of violence and mental health issues yet still elected to classify him so that he could be housed with a cellmate.

26. On information and belief, Defendant Sicard elected not to place Levy in restrictive housing (where he would not have had a cell mate) despite knowing of his violent criminal history and his prior classification in restrictive housing at Santa Rita Jail. Instead, Defendant Sicard assigned Levy to mental health housing where he would be assigned to share a cell.

27. Asa result of Defendant Sicard's classification report, by 8:33 AM on September 13, 2023, Levy had been reassigned to Mr. Brand's housing unit. Defendant Alameda County Sheriff's Office Deputy Erik Castillo interacted with him at that time, giving him the correct clothing for that unit. In his report on Mr. Brand's death, Defendant Castillo wrote that at the time of his first contact with Levy that morning, he "recognized Levy exhibited behavioral health, mental, and/or emotional disorders."



POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

28. A few minutes later, at or about 8:43 AM, Defendant Van Zee interacted with Levy. He told Levy that he was looking for a cell to place him in. This was less than three hours after Defendant Van Zee observed Mr. Brand naked and disoriented in his cell and displaying bizarre behavior.

29. On information and belief, Defendant Van Zee assigned Levy to Mr. Brand's cell shortly after his conversation with Levy.

30. At or about 11:36 AM on September 13, 2023, Defendants Castillo and Van Zee, along with fellow Defendant Alameda County Sheriff's Office Deputy Omar Valerio Trujillo, escorted Levy to Mr. Brand's cell, where they also assigned Levy. Defendants Castillo, Van Zee, and Trujillo housed Mr. Brand, who appeared to be in the midst of a mental health crisis, with Levy, an inmate with a well-documented violent past who had previously been housed in restrictive housing at Santa Rita Jail.

31. Less than an hour later, at or about 12:24 PM on September 13, Defendant Castillo returned to Mr. Brand's cell. He observed Mr. Brand lying on his back on the floor of the cell, covered by a mattress, with his body "positioned in an unusual and irregular way". Levy sat on a stool inside of the cell.

32. Defendant Castillo and fellow deputies quickly removed Levy from the cell to check on Mr. Brand, but it was already too late. Less than an hour after Levy was placed in Mr. Brand's cell, he had killed him via asphyxiation.

33. Photographs taken of Mr. Brand's body show no obvious signs of self-defense wounds nor did Levy appear injured. Mr. Brand, on the other hand, had significant injuries, including a fracture to his chest and a crushed testicle with a large laceration. These injuries suggest Levy inflicted a brutal, one-sided and gruesome attack on a vulnerable Mr. Brand..

34. This horrific murder was the tragic yet predictable result of the Defendant Deputies'



POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

decisions to classify and house Levy with a cellmate, despite the fact that Levy had a well-documented history of violence, mental health issues, and propensity for sexual violence.

35. Plaintiff hereby alleges that Levy's criminal history established that he was far too large of a safety risk to be placed in a shared cell and he should have been placed in restrictive housing, just as he had been in a prior detention at Santa Rita Jail.

36. Since Mr. Brand's passing, his mother, Ms. Erica Edgerly and her family have attempted to obtain information from the County of Alameda regarding how their loved one could have been subjected to such a horrific death. Specifically, Ms. Edgerly has sought answers as to why the Defendant Deputies assigned the two men to occupy the same cell and then left them unsupervised. Ms. Edgerly has not received any answers to her questions or concerns and is thereby forced to file this lawsuit in order to figure out what happened to her beloved son and to hold those who thus far have not been held accountable, accountable to the fullest extent of the law.



POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607



**DAMAGES**

37. As a direct and proximate result of each of the Defendants' failure to protect Decedent from the obvious risk of being housed with a violent cellmate, Decedent and Plaintiff suffered injuries, emotional distress, fear, terror, anxiety, and a loss of sense of security, dignity, and pride as United States Citizens.

38. As a direct and proximate result of each Defendants' act and/or omission as set forth above, Plaintiff and Decedent sustained the following injuries and damages, past and future, among others:

a. Hospital and medical expenses;

b. Pain and Suffering, including emotional distress;

c. Wrongful death;

d. Violation of constitutional rights; and

e. All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

39. The conduct of the Defendant Sergeants and DOES 1-50 was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of Decedent and the public. Plaintiff is therefore entitled to an award of punitive damages against the Defendant Sergeants and DOES 1-50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Fourteenth Amendment – Failure to Protect under 42 U.S.C. § 1983)**
*(Plaintiff as successor-in-interest to Decedent against Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO, and DOES 1 -50)*

40. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

41. Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 assigned Decedent a cellmate—Bryson Levy—who had a long criminal history of violence, sexual assault, and prior assaults on inmates at Santa Rita Jail who so happened to be in the midst of his own mental health crisis.

42. By assigning Decedent a cellmate with such a propensity for violence and cruelty who was in the midst of a mental health episode, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 put Decedent at substantial risk of suffering serious harm.

43. Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 could have avoided this risk all together by placing Levy in restrictive housing where he would have been



POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

in his own cell, which was warranted given his criminal history and mental health condition and/or crisis. Indeed, in the years prior, Levy had been placed in restrictive housing in at least one prior detention at Santa Rita Jail. This was a reasonable available measure that would have abated the risk faced by Plaintiff. Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50, at a minimum, should have monitored Decedent's cell after placing such a dangerous cellmate in the cell with him.

44. Reasonable deputies in Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 place would have known that it was objectively unreasonable to place such a violent detainee in a shared cell with Decedent when both were in the midst of experiencing a mental health crisis.

45. By placing Mr. Levy in Decedent's cell, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 proximately caused Decedent's death.

46. By placing Mr. Levy in Decedent's cell and then failing to monitor, make rounds and observations within reasonable periods of time commensurate to the level of threat posed by the two men's criminal backgrounds and mental health histories coupled with failing to administer mental health medications to Mr. Brand while Mr. Levy was in the midst of a mental health crisis, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 proximately caused Decedent's death.

47. By the actions and omissions described above, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 violated 42 U.S.C. §1983, depriving Plaintiff of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

a. The right to protect Decedent from unreasonably unsafe harms as secured by the Fourteenth Amendment.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

48. Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein with reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.

49. As a result of their misconduct, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 are liable for Plaintiff's injuries and/or damages. Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50's conduct was egregious, outrageous, and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiff's safety, health, and wellbeing. As such, Plaintiff is entitled to punitive damages and penalties as allowable under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(Negligence & Wrongful Death)**
*(Plaintiff individually and as successor-in-interest against Defendants* SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50*)*

50. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

51. At all times, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 owed Decedent and Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

52. At all times, Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 owed Decedent and Plaintiff the duty to act with reasonable care.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

53. These general duties of reasonable care and due care owed to Decedent and Plaintiff by Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 include, but are not limited to, the following specific obligations:

a. To protect Decedent from objectively unreasonable safety risks while housed as a pre-trial detainee at Santa Rita Jail;

b. To refrain from abusing their authority granted them by law;

c. To refrain from violating Plaintiff's and Decedent's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

54. Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

55. As a direct and proximate result of Defendants' negligence, Plaintiff and Decedent sustained injuries and damages pursuant to Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, and against each and every Defendant is entitled to relief as set forth above.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**JURY DEMAND**

56. Plaintiff hereby demands a jury trial in this action.

**PRAYER**

WHEREFORE, Plaintiff prays for relief as follows:

1. For general damages in a sum to be proven at trial;

2. For special damages, including but not limited to, past, present, and/or future wage loss, income and support, medical expenses, and other special damages in a sum to be determined according to proof;

3. For punitive damages against Defendants SICARD, CASTILLO, VAN ZEE, TRUJILLO and DOES 1-50 in a sum according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and § 794 (a); and as otherwise may be allowed by California and/or federal law;

5. Any and all permissible statutory damages;

6. For injunctive relief, including but not limited to, changing the medical response procedures, policies, and guidelines for attending to schizophrenic inmates;

7. For the cost of suit herein incurred; and

8. For such other and further relief as the Court deems just and proper.

Dated: February 20, 2025

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE

/s/ TY CLARKE
ADANTÉ POINTER
PATRICK BUELNA
TY CLARKE
Attorneys for PLAINTIFF

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607